Yes, Your Honor. Good morning, Your Honors. I'm Ajay Matthew, counsel for Petitioner Kejitan Fernandes. You speak up, please. I'm sorry. Sorry, Your Honor. I'm Ajay Matthew, counsel for Petitioner Kejitan Fernandes. I'd like to reserve a minute for rebuttal. As the Board summarily affirmed the decision of the immigration judge, the decision for review before this Court is the decision of the IJ, in which the immigration judge denied Fernandes' application for asylum, withholding of removal, and protection under the Convention Against Torture. I'm not able to hear you, so you'll have to speak up a little louder. I'll speak up, Your Honor. To just briefly summarize the facts of the case, Fernandes testified that he is a Catholic from the state of Goa in India. He testified that he was are both Hindu nationalist groups which have been implicated in anti-Christian violence across the country of India. In particular, the VHP and the BJP believe that he was trying to convert Hindus to Christianity through the charity work he did as a member of the church youth group. And they wanted him to stop his youth group activities, renounce his religion, and convert to Hinduism. Now, there are three incidents which form the crux of Fernandes' claim for asylum. They are as follows. In the first incident, Hindu extremists broke into his house and they beat him with sticks for about 15 minutes. In the second incident, they tried to grab him and catch hold of him, but he escaped. And they threatened they'd finish him. And while he was escaping, he was shot at, but luckily he was quick enough to dodge the bullet. In the third incident, they came to his house and they threatened to kill him unless he voted for the BJP and converted to Hinduism. Now, on the basis of these facts, there was no explicit adverse credibility finding. Therefore, he should be deemed to be credible. Now, the issues that the IJA raised in denying his application for asylum and withholding were as follows. He found that the petitioner did not establish past persecution. And secondly, he held that absent a finding of past persecution, there was no finding of, there was no demonstration of a well-founded fear of future persecution. And thirdly, he held that even if there were one of the above two, he could internally relocate to another part of India and avoid persecution. Turning to the first finding that Fernandez did not demonstrate past persecution, the IJA focused only on the first incident in which he was beaten with sticks. And in considering that incident, he held that since it was unclear whether he was injured or it was unclear his extent of the beating, therefore, it did not rise to the level of persecution. Now, the IJA's holding is clearly erroneous because physical violence such as what Fernandez injured when he was beaten with sticks has been consistently treated as persecution, regardless of the extent of the injuries. I would refer the Court's attention to Guo, in which this Court found there to be past persecution where Guo, a Chinese Christian, was slapped twice, kicked in the stomach, and forced to do push-ups. So even if Fernandez, like Guo, did not suffer any apparent injuries as a result of being beaten, that does not mean his beating did not amount to past persecution. Moreover, the IJA misstates the evidence when he says that Fernandez did not receive medical treatment because Fernandez did testify that his mother treated him with medicines from home, and that's on the record on page 94. In any case, failure to seek medical treatment is not the touchstone of whether the harm amounted to persecution. The IJA committed another serious error in that he ignored the latter two incidents, the second and third incident, because they did not, according to him, result in harm. But Fernandez was shot at. That's a life-threatening assault, which is a form of past persecution. And I refer the Court to Lopez v. Ashcroft and Babla. In both those cases, life-threatening assaults were held to be a form of past persecution. In the third incident, he was threatened with death, and this Court has held that death threats do amount to a form of persecution. At least mental torture he suffered as a result of being threatened would be a form of past persecution. Finally, the most serious error I believe that the IJA committed in finding there was no past persecution was that he failed to consider these three incidents in the aggregate, as is required by this Court in Corablina. If you – the cumulative effect of all these three incidents together definitely compels a finding that Mr. Fernandez was persecuted on account of his religion. Well, assuming that we agree with you that there was past persecution, I think they also found that there was no objective fear of future persecution. Your Honor, well, once a persecution – past persecution is found, there's a rebuttable presumption of a well-founded fear of persecution, which can be rebutted by the evidence of internal relocation. And I'll rely on my arguments in the brief as far as the well-founded fear of persecution is, as far as that issue goes. How about the relocation? I would appreciate it if you would address that, because that issue is of concern to me. And my understanding is there's evidence that some of the states in India would have very substantial Christian populations. So why is the IJA wrong in saying he could relocate somewhere other than the state of Goa and not have to worry about fundamentalist Hindus persecuting him? Yes, Your Honor. The states that do have Christian majorities are way in the northeast of India. They are actually under their own separatist struggles right now. And in fact, you need government permission to go to those states. Okay. What state is Delhi in? Is Delhi in Goa? No, Delhi is a union territory. It's quite far from Goa. Let's take Delhi, for example. Are you saying a Christian could not relocate to the Delhi area without having persecution? Well, Your Honor, these groups, these BJP and VHP, are part of what is known as the Sangh Parivar, which is a collective of various Hindu nationalist groups that exist nationwide. And they have been implicated in incidents of violence against Christians nationwide. What I'm trying to argue is that Mr. Fernandez, wherever he goes, he will face a threat from these groups, because they exist everywhere. If he wants to go to Delhi and... Of course, of course, that's not what the IJ found, right? The IJ actually didn't... Are you saying there's no substantial evidence does not support the IJ's finding in that regard? Yes, I do, because the IJ did not give any consideration to the fact that these groups exist nationwide. His whole focus was on the fact that there's no evidence that the government authorities persecute Christians. And that's not the point here. The point is his specific threat of persecution is from the Hindu fundamentalists and not from the government. And these groups exist nationwide, and the IJ did not properly consider that fact. Well, the BJP is no longer the ruling party, is that right? That is right, Your Honor, but... That's what he was the most afraid of. Yes, that is correct, Your Honor. In 2004, the Congress Party won the elections. The BJP is still the ruling party in a few states in India. But the fact is the other groups in the Sangh Parivar still exist, no matter which party is in power. How about Bombay? That's where his brother is. That's a substantial Christian community, isn't it? It still would be majority Hindu, and the main Hindu nationalist group that's there... But there are a lot of Christians there. I don't know what the percentage of Christians is, Your Honor, in Bombay. Okay. But... Well, the IJ seemed to feel that Bombay was a possibility. And in the record, Mr. Fernandez notes that the Shiv Sena is prevalent in Bombay, and they do dominate the politics in Bombay, and they are another member of the Sangh Parivar. I only have a few minutes, a few seconds left for a rebuttal. All right, fine. Thank you. May it please the Court, my name is Matt McCowan, and I'm here representing the Attorney General of the United States this morning. In this case, the immigration judge determined that the petitioner is not entitled to asylum, was not entitled for withholding of removal, and was not entitled for relief under the Conventions Against Torture. Each of those findings by the immigration judge is supported by substantial evidence, and this Court should uphold them under its narrow standard of review. I'd like to turn right away to take my lead in some more from the petitioner's approach and talk about the evidence of past persecution in this case. There are three isolated incidences alleged in the record below, and the immigration judge did indeed look at them at the aggregate. If you look at page 54 of the administrative record, the judge looks at them at aggregate and determines that they do not constitute evidence of past persecution. And the immigration judge's determination in that regard is quite consistent, actually, with how this Circuit has dealt with that issue in the cases of, I'm not going to get the pronunciation right, of Zhuang and the Prasad cases decided by this Court. In both of those instances, the petitioners suffered physical beatings that were much more severe than the beatings alleged in this case. And in both of those cases, the Ninth Circuit upheld the denial of asylum based on past persecution. I feel that the immigration judge, therefore, was completely correct in his assessment of the evidence, and it is simply not. How about being grabbed from behind and threatened to kill him? He was threatened. That's correct, Your Honor. But there is no evidence that they actually intended to follow up on those threats. And the threats in both the Zhuang and Prasad cases were actually much more severe and immediate than the threats in this case. At any rate, the immigration judge heard that evidence and concluded that that did not constitute substantial evidence of past persecution. I, frankly, have a difficult time seeing why those three incidents aren't past persecution, which would create a presumption. But then the other argument that the IJ gave was that even so, there wasn't an objective fear of future persecution because the mother and brother were living there and wife and still in Goa, and he could relocate to Bombay or other places. And besides that, it would be at sea most of the time. That's right, Your Honor. I agree. That's the best argument the government has. I agree, and I will – even if past prosecution was demonstrated in this case, which, as I indicated, the immigration judge said it wasn't, but say it were, the record is filled with evidence that the petitioner could have dealt with this by moving to a different place in India. The facts that you just alluded to, the fact that even after the first instance, he alleges he came back to Goa, and in this Court's Hakeem decision, the Court has indicated when that sort of thing occurs, when you have a similarly situated – I'm sorry, that was the Belewa decision. But in the Belewa, this Court has indicated when you come back to the source of your persecution, that can undercut your persecution. And when you have similarly situated family members like he has, that can undercut your persecution. But certainly in this case, he had the ability to move to other parts of India where there are Christian majorities. It's my understanding from the record that he did indeed live in the city of Bombay for a time, and there was no instance of persecution during his tenure in Bombay. Are the country reports – are State Department country reports – do they cover this issue of where a Christian can live in the country? Your Honor, they do in a generalized way. They talk about the fact that there is isolated instances of Hindu-Christian violence, but they point out that the Christian and Hindu relations in the area of Goa, where the petitioner is from, are generally harmonious. They also point out that India is generally a secular democracy, but also discuss that there have been what they call isolated instances of Hindu-Christian violence, but indeed those instances have reduced since the timeframe where the petitioner alleged them, and for all I know have reduced even further since the political changes that the court discussed with the petitioner a moment ago. But certainly the immigration judge felt that that was evidence of the government's showing of rebuttable presumption and relied on it in his decision, and appropriately so. In conclusion, because there is no compelling evidence in this case that would require this court to find a contrary conclusion to the immigration judge on the bottom line in this case, that asylum was not established below, under the very narrow standard of review that the Ninth Circuit does apply to decisions by immigration judges, the court should affirm the decision in favor of the government in this case. And I have nothing further unless the court has additional questions for the government. All right. Thank you, counsel. We'll give the full minute because I had promised him to. Your Honor, regarding the issue of the Christian-majority states, I was trying to explain that these are way in the northeast, and they are under their own turmoil. They're states in a lot of turmoil. And I just point you to the record on Record 197, in which the Department of State report notes that in Tripura, which is one of these Christian-majority states, it notes that there's an organization called the National Liberation Front of Tripura. So that gives some suggestion that there is turmoil and separatist struggles against the central government in these states. And it would not be reasonable for a petitioner to go to a state like that where there's already turmoil and get him to go from the fire into the frying pan, as it were, even though it is Christian-majority. On top of that, they speak a different language, and that would be another barrier for him. They don't speak Hindi. How about Bombay? Bombay, again, it's a big city. Bombay is dominated by the Shiv Sena, which is another Sangh Parivar group. And the question is, can he go and live peacefully, practicing his religion the way he was practicing in Goa? Sure, if he wants to keep his Christian activities invisible, he could probably be safe in Bombay. However, if he wants to go to Bombay and practice his religion as he saw fit to do in Goa, which is through doing charity work in the slums or the other poor areas of Bombay, again, this was going to attract the accusation, the suspicion, that he's trying to convert poor Hindus. And that is what is the source of a lot of the violence against Christians in India. I think my time has run out.  The case just heard will be submitted.
judges: Hug, Tashima. Gould